GEORGE McWILLIAMS, Plaintiff in Error,

*vs.*

EDWARD S. BRAGG, Defendant in Error.

ERROR TO THE SHEBOYGAN CIRCUIT COURT.

In actions *ex delicto*, in awarding the damages, the jury may take into considera-
tion, not only the actual injury sustained by the plaintiff, but where the injury
is inflicted under circumstances of aggravation, insult, or cruelty, with vindic-
tiveness or malice, in view of all such circumstances, they may award exem-
plary or punitory damages.

This was an action of trespass for assault and bat-
tery, commenced by the defendant in error against
the plaintiff in error, in the Circuit Court of Fond du
Lac County, from which the venue was changed to
Sheboygan County. The declaration was in the usual
form. Plea, general issue, with notice of justification.
The cause was tried at the March Term, 1852, of the
Sheboygan circuit, where the plaintiff below had ver-
dict and judgment.

On the trial, after the evidence was closed, the cir-
cuit judge charged the jury, among other things, as
follows: "If the offence is committed wilfully, the
"jury have a right to give damages as a punishment
"to the defendant for the purpose of making an ex-
"ample, and as a warning to him and others, in addi-
"tion to their damages, which are as a compensation
"for the plaintiff's injuries:" to which portion of the
charge the defendant's counsel excepted. The jury
found $650 for the plaintiff, and for the alleged error
in that portion of the charge so excepted to, as afore-
said, the cause is brought to this court.

[This case, as will be seen, involves, as the only question presented for the consideration of the court, that of the propriety of awarding exemplary or punitory damages, in cases of this character. It was twice argued; once at the December Term, 1853, after which a re-argument was ordered, and again at the June Term, 1854. The case was very fully discussed, and the authorities, ancient and modern, collated in their order, but the limits prescribed for the reports of the year, will not allow an insertion of the briefs of counsel. The decision was by a majority of the court, Chief Justice Whiton dissenting.—REP.]

*J. E. Arnold*, for the plaintiff in error.

*Edward S. Bragg, p. p.*, for the defendant in error'

*By the Court*, CRAWFORD, J. At the trial of this case in the Circuit Court, the judge charged the jury, on the subject of damages, in the following words: "If the offence is committed wilfully, the jury have a right to give damages as a punishment to the defendant, for the purpose of making an example, and as a warning to him and others, in addition to the damages, which are as a compensation for plaintiff's injuries." The correctness of this charge is the only question before us.

Lord Coke defines damages thus, "*Damna* in the common law hath a signification for the recompense that is given by the jury to the plaintiff or defendant, for the wrong the defendant hath done unto him," (1 *Co. Lit., Vol.* 3, *p* 81.) This definition is adopted by Sir Wm. Blackstone, (2 *Comm.* 438,) and is recognized by all writers on the subject. "They should be precisely commensurate with the injury; neither

June Term
1854.

McWil-
liams
vs.
Bragg.

more nor less ; and this whether it be to his person or estate," says Professor Greenleaf in his Treatise on Evidence, (vol. 2, p. 244.) In *Sedgwick on the Measure of Damages, p.* 38, we find the following language: "Thus far we have been speaking of the great class of cases where no question of fraud, malice, gross negligence or oppression intervenes. Where either of these elements mingle in the controversy, the law, instead of adhering to the system or even the language of compensation, adopts a wholly different rule. It permits the jury to give what it terms punitory, vindictive, or exemplary damages ; in other words, blends together the interests of society and the aggressed individual, and gives damages not only to recompense the sufferer, but to punish the offender."

It will be seen at once, that the views of this question, taken by Professor Greenleaf and Mr. Sedgwick, are utterly irreconcilable, and they gave rise to a very able and elaborate controversy between these learned authors, which is familiar to the profession, and may be found at length, appended to *Mr. Sedgwick's work on Damages, p.* 609 *to* 629.

The subject of exemplary damages in actions *ex delicto*, had not, we supposed, been one creating much difference of opinion among lawyers, until the publication of Mr. Sedgwick's Treatise called forth the article of Professor Greenleaf. Before that time, it is true Mr. Metcalf (now a judge of the Supreme Judicial Court of Massachusetts) had written against the allowance of damages on any other principle than that of compensation (3 *American Jurist* 292-3); but that in *both* actions, where the injury complained of, was accompanied by an evil or malicious intent, or was done under circumstances of indignity, contume-

JUNE TERM
1854.

McWil-
liams
vs.
Bragg.

ly and insult, the jury were at liberty to disregard the rule of mere compensation in fixing the amount of damages, seems to have been generally believed and acted upon by courts.

In an action for assault and imprisonment wherein the jury gave a verdict for £300, a motion for a new trial was denied, although it was supposed £20 would have been sufficient damages for the mere injury. The court in that case declared, that the law had not laid down what should be the measure of damages in such actions—that it was vague and uncertain, depending upon a variety of causes, facts and circumstances. "Torts or injuries" (says *Lord Chief Justice Wilmot*) "which may be done by one man to another, are infinite. In cases of criminal conversation, *battery*, imprisonment, slander, malicious prosecution, &c., the state, degree, quality, trade or profession of the party injured, as well as of the person who did the injury, must be, and generally are considered by the jury in giving damages," (*Hinckle vs Money*, 2 *Wils*. 205.) The same court in a case of assault and battery, said, the jury were the proper judges of the damages, and that when a blow had been given by the defendant, which might have called forth a challenge, and death might have ensued, the jury had done right in giving *exemplary* damages. (*Grey vs. Grant*, 2 *Wils*. 252.)

Upon a motion for a new trial, in the case of *Fabrigas vs. Mostyn*, (2 *W. Black*, 929) the court of common pleas said it was very difficult to interpose with respect to the *quantum* of damages in actions for any personal wrong. "In the present case, (says *Cheif Justice De Grey*) the injury was great, and the jury (not the court) are to estimate the adequate

*satisfaction.*" This was also an action for trespass and false imprisonment and a verdict for £3000 damages was not disturbed.

The case of *Merest vs. Harvey* (5 *Taunt,* 442) was trespass, *quare clausum,* accompanied with circumstances of gross misbehaviour and insult, and the jury gave a verdict for £500, which was the whole amount of damages claimed in the declaration. A motion to set aside the verdict was overruled, and the Chief Justice used the following language. "I wish to know, in a case where a man disregards every principle which actuates the conduct of a gentleman, what is to restrain him except large damages?" and again, "I do not know upon what principle we can grant a rule in this case, unless we were to lay it down that the jury are not justified in giving more than the absolute pecuniary damage that the plaintiff may sustain. Suppose a gentleman has a paved walk in his paddock, before his window, and that a man intrudes and walks up and down before the window of his house, and looks in while the owner is at dinner, is the trespasser to be permitted to say 'here is a halfpenny for you which is the full extent of the mischief I have done.' Would that be a compensation? I cannot say that it would be," and Mr. Justice Heath in the same case said: "It goes to prevent the practice of duelling, if juries are permitted to *punish* insult by exemplary damages."

We have selected and referred to the foregoing cases, out of a large array of adjudications of similar import, to be found in the English reports, and we have done so for the purpose of showing, that in the English Courts, the rule or measure of damages in actions for *wilful torts,* and especially for *personal in-*

June Term
1854

McWil-
liams
vs.
Bragg.

*juries*, is not confined to mere *compensation* for the injury sustained by the plaintiff, whether on his person or to his feelings, but may extend to and embrace whatever the jury may consider a suitable satisfaction as against the defendant, so as to operate not only as an example, but to some extent as a punishment, provided their decision or verdict, be not influenced by passion or mere prejudice, and be not unreasonable.

In the American Courts this question is by no means a novel one. In the case of *Tillotson vs. Cheetham*, (3 *John*, 56) which was an action for libel. *Chief Justice Kent* in his charge to the jury, denied the correctness of the doctrine, that the jury, in a civil suit, such as the one then before them, ought not to punish the defendant · for the pernicious effect, which a publication such as the one complained of, was calculated to produce in society, and the Supreme Court held the doctrine to be sound. They say "it cannot be requisite to multiply instances in which the doctrine, contained in this part of the charge, has received the sanction of the English, and of the American Courts of justice. It is too well settled in practice, and is too valuable in principle, to be called in question."

So also, in *Wort vs. Jenkins*, (14 *John*, 352) the same court, in trespass for a cruel and wanton injury to the plaintiff's beast, where at the circuit, the judge charged the jury that in addition to the value of the mare, they had a right to give *smart money*, refused to set aside the verdict. Again, in the case of *Cook vs. Ellis* (6 *Hill* 466) which was an action for assault and battery upon a female with intent to have carnal connection with her; *Judge Willard*, who presided at the trial, charged the jury that, although the defen-

dant had proved that upon an indictment for the same assault and battery, he had been convicted and had been sentenced to pay a fine of $250, which he had paid, yet these proceedings did not prevent the jury from giving *exemplary* damages if they choose to do so, though the fine and payment were proper to be considered, in fixing the amount to be allowed to the plaintiff. The Supreme Court, in refusing a new trial say, "In vindictive actions, and this is agreed to come within that class—jurors are always authorized to give exemplary damages, where the injury is attended with circumstances of aggravation; and the rule is laid down without the qualification that we are to regard either the possible or the actual punishment of the defendant by indictment and conviction at the suit of the people. That the criminal suit is not a bar to the civil, and that no court will drive the prosecutor to elect between them, if the former be by indictment, is entirely settled, (*Jones vs. Clay*, 1 *Bos. and Pul.* 291. *Jacks vs. Bell* 3 *Car. and P.* 316) nor will the court even stay proceedings in the civil action, to govern themselves by the event of a pending criminal prosecution."

It would be difficult to cite a case more directly in point, in the case now before us, than the one last referred to. There the injury complained of had been the subject of criminal proceedings and conseqent punishment, and yet, in a subsequent civil action the jury were expressly authorized to go beyond the rule of compensation to the plaintiff for the injury sustained, and to impose damages by way of example, if they chose to do so. And we think an attentive perusal of the opinion of the court in that case, will afford strong reasons in favor of the rule.

June Term
1854.

McWil-
liams
vs.
Bragg.

We believe that the great weight of authority in the American Courts is in favor of permitting juries in actions of this character, not only to take into consideration the actual injury sustained by the plaintiff, but, where that injury is inflicted under circumstances of aggravation, insult or cruelty, with vindictiveness and malice; but in view of all such circumstances, to impose what is sometimes termed *exemplary*, and sometimes *punitory* damages, in addition to the actual damages. To refer in detail, to the several cases in the American Courts in which this doctrine has been approved of, is not deemed necessary, as they are very fully commented upon in the articles of Prof. Greenleaf and Mr. Sedgwick, before referred to, and are cited by the defendant in error, in the present case. We may however, remark, that since the publication of Mr. Sedgwick's work, the rule as laid down by him, has been recognized in *Smith vs. Sherwood*, (2 *Texas R.* 460) in *Rippey vs. Miller*, (11 *Iredell*, 247) in *Morse vs. The Syracuse & Auburn R. R. Co.* (10 *Barb. S. C.* 624-625) and in *Hilton vs. Middleton*, (2 *Cal.* 54.) Our own statute, in providing that actions for assault and battery, &c., shall survive, evidently contemplates the correctness of allowing *vindictive* or *exemplary* damages in such cases, because it declares that the plaintiff shall not be entitled to such damages, when the action is prosecuted to judgment against the executor or administrator.

We have carefully considered this case, and are of opinion that the charge given to the jury in the Circuit Court was not erroneous. The judgment of the Circuit Court is affirmed.