Craker vs. The Chicago & Northwestern Railway Company.

CRAKER VS. THE CHICAGO & NORTHWESTERN RAILWAY COM-
PANY.

RAILROADS: LIABILITY OF COMPANY FOR ACTS OF CONDUCTOR: DAMAGES. (1, 2) *General rule as to liability of master for acts of servant.* (3) *Duty of railway company to female passenger.* (4) *Exemplary damages.* (5, 6) *Compensatory damages; what they include.* (7) *Question of excessive damages.*

1. A master is liable for a wrong done by his servant, whether through negligence or the malice of the latter, in the course of an employment in which the servant is engaged to perform a duty which the master owes to the person injured.

[2. *It seems* that the master should be liable *in all cases* for the servant's wrongful act done *in the course of his employment,* whether through negligence or malice.]

3. A railroad company is bound to protect female passengers on its trains

| 36 | 657 |
|----|-----|
| 75 | 323 |
| 36 | 657 |
| 76 | 386 |
| 36 | 657 |
| 77 | 227 |
| 36 | 657 |
| d87 | 12 |
| 87 | 13 |
| 36 | 657 |
| 90 | 459 |
| 36 | 657 |
| 94 | 348 |
| 36 | 657 |
| 97 | 127 |
| 36 | 657 |
| 106 | 306 |
| 106 | 307 |
| f106 | 437 |
| f106 | 438 |
| 36 | 657 |
| 109 | 171 |
| 36 | 657 |
| 54 LRA | 754 |
| 36 | 657 |
| 116 | 4630 |

Craker vs. The Chicago & Northwestern Railway Company.

from all indecent approach or assault; and where a conductor on the company's train makes such an assault on a female passenger, the company is liable for compensatory damages.

4. *Exemplary* damages cannot be recovered against the principal for a wrongful and malicious act of the agent, neither authorized nor ratified by the principal.

5. In actions for personal torts, the "compensatory damages" which may be recovered of the principal for the agent's act, include not merely the plaintiff's pecuniary loss, but also compensation for mental suffering. An ambiguous expression on this subject in *Railroad v. Finney*, 10 Wis., 388, corrected.

6. In awarding compensatory damages in such cases, no distinction is to be made between other forms of mental suffering and that which consists in "a sense of wrong or insult" arising from an act really or apparently "dictated by a spirit of willful injustice or by a deliberate intention to vex, degrade or insult." A contrary intimation in *Wilson v. Young*, 31 Wis., 574, overruled.

7. A verdict of $1,000 damages for the insult offered by defendant's conductor to the plaintiff in this case, *held* not so excessive as to authorize the court to set it aside.

APPEAL from the Circuit Court for *Sauk* County.

Action for insulting, violent and abusive acts alleged to have been done to the plaintiff by the conductor of one of defendant's trains while plaintiff was a passenger on such train. Answer, a general denial.

The substance of plaintiff's testimony at the trial was as follows: She was about twenty years of age, and a school teacher, when the facts occurred on which the action was founded. On a certain morning, she went to defendant's depot at Reedsburgh in Sauk county, for the purpose of taking the train to Baraboo in that county, but was a few minutes too late. The station agent informed her that there was no other passenger train until 9 o'clock P. M., but there was a freight and accommodation train in the afternoon. She waited for this train; purchased a ticket during the interval, paying the full fare charged on passenger trains; took said afternoon train under the guidance of the station agent; and delivered up her ticket to the conductor of the train, at his request, and was given a

Craker vs. The Chicago & Northwestern Railway Company.

seat in the car in an office chair. There was another passenger on the car, besides the conductor and a brakeman. Near Ableman's (a station on the road), the other passenger and the brakeman left the car, plaintiff and the conductor being the only persons remaining in it. The conductor then came and sat down near the plaintiff, and asked her several questions as to where she was going, where she lived, and whether she was acquainted with certain persons. What followed is thus stated by the witness: "He said, 'I suppose you are married like all the rest of the school marms?' I said, 'No, I am not.' Then he sat up nearer to me, and put his hand in my muff, and said, 'There is room for two hands in this muff, aint there?' I said, 'No, sir, there is not for yours,' and jerked my muff away. He then said, 'My hand is pretty dirty, aint it? It looks as though it needed washing.' I told him to wash it then, water was plenty. He then said, 'It is thawing considerable, that's so.' I had the tassel of my muff in my hand, tossing it, and he said, 'If you don't stop twisting that, you will wear it all out.' I said, 'I don't care if I do.' He then said, 'What makes you look so cross?' I didn't answer him, but turned away from him. Pretty soon he got up, and I supposed he was going away. He stepped to the side of my chair, threw his arms around me, and held my arms down. He threw his left arm around my shoulder, and took hold of my arm between the shoulder and left elbow with his right arm; he pressed his elbow on my right arm, and then commenced kissing me. I said, 'Oh, let me go; you will kill me.' He said, 'I am not agoing to hurt you.' Then I said, 'Do let me go; I will jump out of the car, if you will.' I tried to get up on my feet, and he pushed me back in the chair, and said, 'I aint agoing to hurt you.' Then I said, 'What have I ever done to you, that you should treat me in this way?' After he had kissed me five or six times, he said, 'Look me in the eye, and tell me if you are mad.' I said, 'Yes, I am mad.'" Plaintiff continued in the car until she reached her place of destination.

Craker vs. The Chicago & Northwestern Railway Company.

It appeared from the cross examination that the conductor in question was a young man; that plaintiff had never seen him before; and that immediately after committing the acts described, he left the car. It also appeared that on complaint of this plaintiff he was arrested and convicted on a criminal charge of assault and battery, for the same acts here complained of, and was fined $25, and committed until said fine and the costs of the prosecution were paid; and that he was discharged from the employment of the defendant company immediately upon its being informed of this charge against him by plaintiff.

In behalf of the defendant, Mr. Mackey, an attorney-at-law, testified that after this matter came to the knowledge of the company, he called upon plaintiff in its behalf, and expressed to her the regrets of the company at what had occurred; informed her that it had discharged the conductor, and stated that if she would prosecute him, it would "furnish her the money to prosecute him sharply." He further informed her that he had called "to find out if she was injured, and if so, to make her ample compensation;" to which she replied, "that she was not actually injured; that there was no actual injury to complain of." On his cross examination the witness said he knew that Mr. Lusk was plaintiff's attorney, but did not think it necessary to call upon him; and that he explained to plaintiff that the company was sorry she had not commenced suit against the conductor.

The court refused a nonsuit, and instructed the jury, in substance, that if plaintiff, whilst a passenger as above stated, was abused, insulted or ill-treated by the conductor of the train, defendant was liable to her for such injury as might be found from the evidence to have been inflicted; that the measure of damages would be such compensation as the jury might see fit to award for the injury sustained, including injury to the feelings, "the elements of which are, such insult, indignity, contumely and the like, as she may have suffered;" that they

could not " give anything by way of example or punishment," or what is termed vindictive damages, as they might do jf they had the party committing the assault before them ; and that they were not to be governed by any different rules than those which would govern them if the action were against an individual, situated, in reference to the transaction, similarly to the defendant corporation ; that they were not to assume that plaintiff had received any other injury, in reputation or otherwise, than was shown by the testimony ; and that in reference to the point or points upon which they were to assess damages, they were to be governed by a sound discretion and good judgment, and give such damages as they thought, under the circumstances, should be given.  Defendant requested the court to instruct the jury, that upon the evidence plaintiff was not entitled to recover, " the acts of the conductor complained of not having been committed within the scope of his employment or in the performance of any actual or supposed duty ;" but the instruction was refused.

Plaintiff had a verdict for $1,000 damages; a new trial was denied ; and defendant appealed from a judgment on the verdict.

*Smith & Lamb,* for appellant, argued that the acts complained of were a willful and malicious trespass of the conductor, outside of and wholly foreign to his employment, and that under such circumstances the law has long been settled that the master is not liable in a civil action for the wrongful act of the servant. Lord HOLT, quoted by Lord KENYON in *McManus v. Crickett,* 1 East, 106 ; Story on Agency, § 456 ; Smith's Master and Servant, 136 [160] ; Addison on Torts (last ed.), 934 ; Schouler on Dom. Rel., 638, 641.  The " respectful treatment " which a carrier is said to owe to passengers (*Goddard v. G. T. R'y,* 57 Me., 202), is one of those "imperfect obligations " (1 Rutherford's Inst., ch. 1, secs. 4 and 5), disregard or violation of which does not give a right of action.  1 Poth. Obl., 1 ; Vattel, lxii ; Bouv. Inst., 241, 242 ; Bouv. Law Dic., " Imperfect Obligation " and " Right ;" *Mills v. Wyman,* 3 Pick., 207, 210.  If a

merchant's clerk, in a sudden passion or to gratify a grudge, assaults or insults a customer, not in the presence of the merchant, wh o repudiates the act and discharges the clerk at once on learning of it, can the merchant be mulcted in damages because his clerk has violated the implied obligation that the customer should receive civil treatment? *Mali v. Lord*, 39 N. Y., 383. If a hotel cook, for a private reason of his own, poisons or otherwise seriously injures a guest, will the proprietor, who was ignorant of the wrong before. and when it happened, was in no fault in selecting his servants, and promptly repudiated the act and discharged the servant, be liable in damages on the *implied* understanding that the guest should be civilly treated while in his house? *Foster v. Essex Bank*, 17 Mass., 511; *E. & C. R'y Co. v. Baum*, 26 Ind., 70. Counsel further argued that no good object was to be accomplished by making the master liable in such a case as this; that no consideration would induce the defendant to knowingly allow such a wrong by any of its employees, and no punishment was needed to make it more vigilant, as there was no pretense of any lack of vigilance on its part; that it was a suggestion " not fit to be made " that any different rule in such cases should be applied to railway companies than that applicable to other persons (26 Ind., 70); and that it was well worthy of consideration whether a rule holding the master responsible for his servant's willful acts in a case like this would not put into the hands of servants a dangerous power of mischief when they had any real or fancied grievance against the master. In support of the view that masters are liable only for those acts of their servants which are done in the line of their duty, or within the scope of their authority, express or implied, counsel cited, further, *Croft v. Alison*, 4 B. & A., 590; *Bowcher v. Noidstrom*, 1 Taunt., 568; *Ellis v. Turner*, 8 Term, 533; *Wright v. Wilcox*, 19 Wend., 343; *Vanderbilt v. Turnpike Co.*, 2 Coms., 479; *Thayer v. Boston*, 19 Pick., 516; *Mech. Bk. v. Bk. of Columbia*, 5 Wheat., 326; *Finucane v. Small*, 1 Esp., 315; *Wilson v. Pev-*

Craker vs. The Chicago & Northwestern Railway Company.

*erly,* 2 N. H., 548 ; *Southwick v. Estes,* 7 Cush., 385 ; *Brasher v. Kennedy,* 10 B. Mon., 28 ; *Kerns v. Piper,* 4 Watts, 222 ; *Campbell v. Stairet,* 2 Murphy, 389 ; *Yates v. Squires,* 19 Iowa, 26 ; *De Camp v. Railway Co.,* 12 id., 348 ; *Crocker v. Railway Co.,* 24 Conn., 249 ; *Cox v. Keahey,* 36 Ala., 340 ; *Kline v. Railway Co.,* 37 Cal., 400 ; *Harris v. Nicholas,* 5 Munf., 483 ; *Puryear v. Thompson,* 5 Humph., 397 ; *McClenaghan v. Brook,* 5 Rich. Law., 17 ; *Baker v. Kinsey,* 38 Cal., 631 ; *Little M. R'y Co. v. Wetmore,* 19 Ohio St., 110 ; *Fraser v. Freeman,* 43 N. Y., 566 ; *Hamilton v. N. Y. C. R. R. Co.,* 51 id., 100 ; *Roe v. Birkenhead etc. R'y Co.,* 7 Eng. L. & E., 546, 549. See also *Moore v. Railway Co.,* 4 Eng. R., 203, decided in 1872 ; *Bayley v. Railway Co.,* id., 384, decided in 1873 ; *Higgins v. Turnp. Co.,* 46 N. Y., 26, and *Isaacs v. Railway Co.,* 47 id., 122, both decided in 1871, with *Jackson v. Railway Co.,* 47 N. Y., 274, decided in 1872. Counsel further cited and commented upon *Railroad Co. v. Finney,* 10 Wis., 388 ; *Bowen v. Railway Co.,* 18 N. Y., 408 ; *Railroad Co. v. Vandiver,* 42 Pa. St., 365 ; *Ramsden v. Railway Co.,* 104 Mass., 117 ; *Bryant v. Rich,* 106 id., 180 ; *Passenger R'y Co. v. Young,* 21 Ohio St., 518 ; *Crocker v. Railroad Co.,* 24 Conn., 249 ; *Garretzen v. Duenckel,* 50 Mo., 104 ; *Seymour v. Greenwood,* 7 H. & N., 355 ; *Bayley v. Railway Co.,* 3 Eng., 308 ; *Howe v. Newmarch,* 12 Allen, 52 *;* *Brand v. Railroad Co.,* 8 Barb., 368 ; *Railway Co. v. Hinds,* 53 Pa. St., 512 ; *Flint v. Transp. Co.,* 34 Conn., 554 ; *Railway v. Blocher,* 27 Md., 277 ; *Railroad v. Derby,* 14 How., 468 ; and *Weed v. Panama Railroad Co.,* 17 N. Y., 362 ; all which, they contended, were either confirmatory of or resolvable by the rule above stated ; and they insisted that the two cases last cited do not support the remark in A. & A. on Corp. (8th ed.), § 388, which purports to be based upon them.   2. They argued that in any case the rule of damages given to the jury was erroneous ; first, because, in the absence of any actual bodily injury, there was no basis for damages for injury to the feelings (*Morely v. Dunbar,* 24 Wis., 189 ; *Johnson v. Wells, Fargo & Co.,* 3 Am.

R., 245); and secondly, because, according to the language of the court in *Wilson v. Young*, 31 Wis., 582, damages for injury to the feelings, like vindictive damages, "depend entirely on the malice of the defendant," and the malice of a servant cannot be imputed to his master, innocent in fact.

*William Ruger*, on the same side, contended that, in reference to the liability of a master for the acts of his servant, the following principles are settled by the great weight of authority: 1. Where, by reason of the servant's unauthorized willful tort, the master fails to perform his contract, he is liable, on that ground, to make compensation for such damages as naturally result from his failure to perform his contract. 2. Where, by reason of the servant's unauthorized tort, the master's work has been improperly done, he is chargeable with negligence, and will, on that ground, be liable to make compensation for all injuries naturally and proximately resulting from such negligence. 3. Where the master has authorized the servant to do the act in question, but has not authorized him to do it in a wrongful or violent manner, there the servant's *act* will be imputed to the master, and he may be charged as for his own act negligently done, on the ground that he has authorized the doing of the act and is an insurer of its *prudent* performance; but, as he is not an insurer of his servant's *morals*, the *malice* of the act cannot be imputed to him. The measure of damages will be, compensation for the natural and proximate consequences of the *physical act.* 4. If the act authorized naturally involves malice, or if the master expressly authorizes a malicious mode of performance, then the *animus* of the servant will also be imputed to the master, and he may be charged to the same extent as the servant. To illustrate and support these principles, counsel cited and commented upon a large number of cases, including, besides those above cited, the following: *Timothy v. Simpson*, 6 C. & P., 499 (25 E. C. L., 509); *Lyons v. Martin*, 35 E. C. L., 448; *Goff v. Railway Co.*, 3 E. & E. (107 E. C. L.), 671; *Church v. Mansfield*, 20 Conn., 284; *Detroit Daily*

*Post Co. v. McArthur*, 16 Mich., 447; *The Amiable Nancy*, 3 Wheat., 546; *McGuire v. Steamship Golden Gate*, McAl. (U. S. C. C.), 104; *Hagan v. Railway Co.*, 3 R. I., 88; *McLellan v. Bank*, 24 Me., 566; *Ackerson v. Railway Co.*, 32 N. J., 254; *McKeon v. Railway Co.*, 42 Mo., 79; *Wardrobe v. Stage Co.*, 7 Cal., 118; *Turner v. Railroad Co.*, 34 id., 594 (1 Corp. Cas., 202); *Winterson v. Eighth Av. R'y Co.*, 2 Hilt., 389; *Railway Co. v. Donahue*, 70 Pa. St., 119. Counsel also criticised *Passenger R'y Co. v. Young*, 21 Ohio St., 518 (8 Am. R., 78); *Seymour v. Greenwood*, 6 H. & N., 359; *Isaacs v. Railway Co.*, 47 N. Y., 122, 125–9, and *Ramsden v. Railway Co.*, 104 Mass., 117, as calulated to mislead by lack of clearness in stating the grounds of decision and the limits of the liability declared. 2. Counsel further contended that the liability of *corporations* for the acts of their servants is precisely the same as that of masters in general, citing to this point many of the foregoing cases, and also *Railroad Co. v. Schuyler*, 34 N. Y., 49; *Hamilton v. Railway Co.*, 53 id., 29; *Railway Co. v. Rogers*, 38 Ind., 126; 18 Iowa, 200; *Allen v. Railway Co.*, L. R., 6 Q. B., 68; A. & A. on Corp., § 338; Shearm. & Redf. on Neg., §§ 119, 120, and cases there cited; Story on Agency, § 308. The cases of *Goddard v. Railway Co.*, 57 Me., 202; *Sherley v. Billings*, 8 Bush, 147; and *Bryant v. Rich*, 106 Mass., 180, make a groundless and illusory distinction between corporations and individuals respecting their vicarious liability. (1) So far as this attempted distinction rests upon the fact that corporations are compelled to transact a large part of their business through agents, counsel answered, that the fact of a natural person being compelled, either by physical or legal disability, or by the nature of his business, to act through agents, had never been supposed to be a reason for charging such person with the unauthorized, willful and malicious acts of his agents. If there is any case where the law should regard the master as present and assenting to every act of his agent, it is where the master has reserved no control, but has given such full

power and discretion to the agent that the latter is the ultimate source of authority. The subordinate servants of railway corporations, however, are far from occupying this position. There is probably no class of servants who are under stricter discipline or closer surveillance. (2) But the more deceptive ground on which these decisions are supported is, that it is a *part of the contract* between the railway company and the passengers, that the latter shall not be ill-treated by the carrier's servants. If this be true, it is not seen why the carrier would not be charged for all misconduct of its servants towards passengers, whatever the motive prompting it, and whatever the position of the servant; as, for example, in the case of a trackman who should maliciously place an obstruction before a train. But it is not claimed that there is any such term in the express contract; and the implied terms cannot be broader than the law upon which the implications are based. It follows that the carrier does not contract that his servants shall not maltreat passengers, unless the law requires the carrier to see to it at his peril that his servants deport themselves courteously and morally; or, in other words, unless the law makes the master insure his servants' morals; which has been shown not to be the case. It is said that the carrier is liable if his servants fail to exercise care to protect passengers from the recklessness or violence of fellow passengers, and that, *a fortiori*, the carrier is liable if its own servants offer violence. The answer is, that the law makes the master insure the *prudence* of his servants, and hence the former may be charged for the *neglect* of the latter in failing to protect a passenger against the violence of fellow passengers; but as the law does not make the master insure his servant's *morals*, the master is not charged if his servant wantonly assaults a passenger. 3. As to the present action, counsel argued, (1) That if the above positions are correct, defendant's contract was fully performed, plaintiff having elected to continue her journey, thus accepting performance of the express contract, and there being no implied term in the

contract to the effect that defendant's servants should not assault her. (2) That the cause of action stated in the complaint was not *assumpsit* for the nonperformance of the contract, but trespass for the assault. *Rothe v. Rothe*, 31 Wis., 572–3. 4. As to the question of public policy, counsel contended, (1) That if public policy required so sweeping a change in the law of public carriers of passengers, it should be made by the legislature, and not by the courts. (2) That public policy does not in fact require the change ; that it may perhaps require that such carriers should be regarded as ratifying the act of their servant where they retain him in service after knowledge of his conduct comes to the managing officers, since this rule, though severe on employees, as precluding forgiveness for even a first offense, would be a great aid in the enforcement of discipline ; but that a rule which would in effect make a master insure his servant's morals, would subvert discipline by putting the master in the power of his servants.

*J. W. Lusk*, with *C. C. Remington*, of counsel, for respondent, contended that the conductor of a train, in all his acts in the course of his employment, represents the company to such an extent that such acts are the acts of the company. *Goddard v. G. T. R'y*, 57 Me., 202 ; *Bass v. C. & N. W. R'y Co.*, *ante*, p. 450 ; 1 Redf. on R. W., 5, 15 et seq. ; 2 id., 231, and note. 2. That if the act here complained of was not the direct act of the defendant, it was the act of its servant in the course of his employment, for which it is responsible. *Goddard v. G. T. R'y, supra ; Seymour v. Greenwood*, 7 H. & N., 355 ; *Railroad Co. v. Finney*, 10 Wis., 388 ; *Railroad v. Blocher*, 27 Md., 277 ; *Landreaux v. Bell*, 5 La., 434 ; *Weed v. Panama R. R. Co.*, 17 N. Y., 362 ; *Coleman v. N. Y. & N. H. R'y Co.*, 106 Mass., 160 ; *Railway Co. v. Anthony*, 43 Ind., 183 ; *Railroad Co. v. Rogers*, 38 id., 116 ; *Railroad Co. v. Vandiver*, 42 Pa. St., 365 ; *Ramsden v. Railway Co.*, 104 Mass., 117 ; *Howe v. Newmarch*, 12 Allen, 49 ; *Brand v. Railroad Co.*, 8 Barb., 368. 3. That defendant, by the wrongful act in question, violated

its contract with plaintiff as a carrier of passengers, and thereby became liable.    2 Parsons on Con. (5th ed.), 226; *Railroad v. Hinds*, 7 Am. Law Reg. (N. S.), 14; *Flint v. Transp. Co.*, 34 Conn., 554; *Chamberlain v. Chandler*, 3 Mason, 242; *Nieto v. Clark*, 1 Clifford, 145; *Bryant v. Rich*, 106 Mass., 180, quoting CLIFFORD, J., in *Pendleton v. Kinsley* (R. I. Circuit, June, 1870); *Sherley v. Billings*, 8 Bush, 147; *Bank of Orange v. Brown*, 3 Wend., 158; *Wood v. M. & St. P. R'y Co.*, 32 Wis., 398; *Weed v. Panama R. R. Co.*, *supra;* A. & A. on Corp., § 288.   4. That upon general principles of public justice and public policy, railroad companies must be held to a strict responsibility for the proper conduct of their business, especially in the transportation of passengers.   Counsel illustrated the various grounds upon which they might be held liable, by the cases of *Railroad v. Derby*, 14 How. (U. S.), 468; *Armory v. Delamirie*, 1 Strange, 504 (1 Smith's L. C., 584); *Bush v. Steinman*, 1 Bos. & P., 404; *Sly v. Edgley*, 6 Esp., 6; *Randleson v. Murray*, 8 Ad. & E., 109; opinion of PARK, Baron, in *Quarman v. Burnett*, 6 M. & W., 499.

RYAN, C. J.    I.  We cannot help thinking that there has been some useless subtlety in the books in the application of the rule *respondeat superior*, and some unnecessary confusion in the liability of principals for willful and malicious acts of agents. This has probably arisen from too broad an application of the *dictum* of Lord HOLT, that " no master is chargeable with the acts of his servant but when he acts in the execution of the authority given to him, and the act of the servant is the act of the master." *Middleton v. Fowler*, 1 Salk., 282.    For this would seem to go to excuse the master for the negligence as well as for the malice of his servant.    One employing another in good faith to do his lawful work, would be as little likely to authorize negligence as malice; and either would then be equally *dehors* the employment.   Strictly, the act of the servant would not, in either case, be the act of the master.   It is true that so great

an authority as Lord KENYON denies this in the leading case of *McManus v. Crickett*, 1 East, 106, which has been so extensively followed; and again, in *Ellis v. Turner*, 8 Term, 531, distinguishes between the negligence and the willfulness of the one act of the agent, holding the principal for the negligence but not for the willfulness. It is a singular comment on these subtleties, that *McManus v. Crickett* appears to rest on *Middleton v. Fowler*, the only adjudged case cited to support it; and that *Middleton v. Fowler* was not a case of malice, but of negligence, Lord HOLT holding the master in that case not liable for the negligence of his servant, in such circumstances as no court could now doubt the master's liability. In spite of all the learned subtleties of so many cases, the true distinction ought to rest, it appears to us, on the condition whether or not the act of the servant be in the course of his employment, as is virtually recognized in *Ellis v. Turner*.

But we need not pursue the subject. For, however that may be in general, there can be no doubt of it in those employments in which the agent performs a duty of the principal to third persons, as between such third persons and the principal. Because the principal is responsible for the duty, and if he delegate it to an agent, and the agent fail to perform it, it is immaterial whether the failure be accidental or willful, in the negligence or in the malice of the agent; the contract of the principal is equally broken in the negligent disregard, or in the malicious violation, of the duty by the agent. It would be cheap and superficial morality to allow one owing a duty to another to commit the performance of his duty to a third, without responsibility for the malicious conduct of the substitute in performance of the duty. If one owe bread to another and appoint an agent to furnish it, and the agent of malice furnish a stone instead, the principal is responsible for the stone and its consequences. In such cases, malice is negligence. Courts are generally inclining to this view, and this court long since affirmed it.

In *Railroad Co. v. Finney*, 10 Wis., 388, DIXON, C. J., says: "It was insisted by the counsel for the plaintiffs in error, that in no case could a right of action arise against the principal, for the willful and malicious misconduct of the agent, unless it was previously authorized or subsequently ratified by him. On careful examination of this position, we are satisfied that it is incorrect. The case of *Weed v. P. R. R. Co.*, 17 N. Y., 362, will be found to be a clear and well reasoned case upon the subject. It was there held that it was no defense to an action against a railroad corporation, for its failure to transport a passenger with proper dispatch, that the delay was the willful act of the conductor in charge of the train. The rule established by that case, as we think with much reason, is, that where the misconduct of the agent causes a breach of the obligation or contract of the principal, there the principal will be liable in an action, whether such misconduct be willful or malicious, or merely negligent. The action, though undeniably in tort, is treated virtually as an action *ex contractu*, and governed by the same rule of damages, unless the malice or wantonness of the agent is brought home and directly charged to the principal. In this case, the contract between the plaintiff and defendant was, that in consideration of his having paid to them the fee demanded, they were carefully to transport him in their cars from Madison to Edgerton. It is no defense for their breach of this contract, that it was occasioned by the willful act of their agent. The corporation was incapable of executing it, except through the medium of its agents. If in doing so they violate it, no matter from what motive, their acts are the acts of their principals, who hold them out to the world as capable and faithful in the discharge of their duties. In no other way could the company be held to a performance of its contracts." This was, perhaps, *obiter* in that case; but, with a single qualification, presently made and not material in this connection, we fully reaffirm it in this case.

In *Bass v. Railway Co.*, *ante*, p. 463, speaking of railroad

officers in charge of passenger trains, we said : " They act on the peril of the corporation, and their own. Indeed, as that fictitious entity, the corporation, can act only through natural persons, its officers and servants, and as it, of necessity, commits its trains absolutely to the charge of officers of its own appointment, and passengers of necessity commit to them their safety and comfort *in transitu*, under conditions of such peril, and subordination, we are disposed to hold that the whole power and authority of the corporation, *pro hac vice*, is vested in these officers; and that, as to passengers on board, they are to be considered as the corporation itself; and that the consequent authority and responsibility are not generally to be straitened or impaired by any arrangement between the corporation and the officers, the corporation being responsible for the acts of the officers in the conduct and government of the train, to the passengers traveling by it, as the officers would be for themselves, if they were themselves the owners of the road and train. We consider this rule essential to public convenience and safety, and sanctioned by great weight of authority." We have carefully reconsidered all that was said in *Bass v. Railway Co.*, and reaffirm the doctrine of that case. And what it was there said, in the passage cited, we were disposed to hold, we now hold, with a single qualification which we will presently make and need not notice here.

So far as they relate to the duties of railroad companies to their passengers, and their responsibility for the officers of their trains, *Railroad Co. v. Finney* and *Bass v. Railway Co.* are in perfect accord, though the latter case carries the principle more into detail ; but both rest on the same principle.

In *Bass v. Railway Co.*, we had occasion also to consider somewhat the nature of the obligations of railroad companies to their passengers under the contract of carriage ; the " careful transportation " of *Railroad Co. v. Finney*. On the authority of such jurists as STORY, J., and SHAW, C. J., we likened them to those of innkeepers. And, speaking of female pas-

sengers, we said : " To such, the protection which is the natural instinct of manhood towards their sex, is specially due by common carriers." In *Day v. Owen*, 5 Mich., 520, the duties of common carriers are said to " include everything calculated to render the transportation most comfortable and least annoying to passengers." In *Nieto v. Clark*, 1 Clifford, 145, the court says : " In respect to female passengers, the contract proceeds yet further, and includes an implied stipulation that they shall be protected against obscene conduct, lascivious behavior, and every immodest and libidinous approach." Long before, STORY, J., had used this comprehensive and beautiful language, worthy of him as jurist and gentleman, in *Chamberlain v. Chandler*, 3 Mason, 242 : " It is a stipulation, not for toleration merely, but for respectful treatment, for that decency of demeanor which constitutes the charm of social life, for that attention which mitigates evils without reluctance, and that promptitude which administers aid to distress. In respect to females, it proceeds yet further ; it includes an implied stipulation against general obscenity, that immodesty of approach which borders on lasciviousness, and against that wanton disregard of the feelings which aggravates every evil." These things were said, indeed, of passage by water, but they apply equally to passage by railroad. *Commonwealth v. Power*, 7 Met., 596.

These were among the duties of the appellant to the respondent, when she went as passenger on its train : duties which concern public welfare. These were among the duties which the appellant appointed the conductor to perform for it, to the respondent. If another person, officer or passenger or stranger, had attempted the indecent assault which the conductor made upon the respondent, it would have been the duty of the appellant, and of the conductor for the appellant, to protect her. If a person, known by his evil habits and character as likely to attempt such an assault upon the respondent, had been upon the train, it would have been the duty of the appellant, and of

the conductor for the appellant, to the respondent, to protect her against the likelihood. *Stephen v. Smith*, 29 Vt., 160; *Railroad Co. v. Hinds*, 53 Pa. St., 512; *Commonwealth v. Power*, *supra; Nieto v. Clark, supra;* and other cases cited in *Bass v. Railway Co.* We do not undertand it to be denied that if such an assault on the respondent had been attempted by a stranger, and the conductor had neglected to protect her, the appellant would have been liable. But it is denied that the act of the conductor in maliciously doing himself what it was his duty, for the appellant to the respondent, to prevent others from doing, makes the appellant liable. It is contended that, though the principal would be liable for the negligent failure of the agent to fulfil the principal's contract, the principal is not liable for the malicious breach by the agent, of the contract which he was appointed to perform for the principal : as we understand it, that if one hire out his dog to guard sheep against wolves, and the dog sleep while a wolf makes away with a sheep, the owner is liable ; but if the dog play wolf and devour the sheep himself, the owner is not liable. The bare statement of the proposition seems a *reductio ad absurdum*. The radical difficulty in the argument is, that it limits the contract. The carrier's contract is to protect the passenger against all the world; the appellant's construction is, that it was to protect the respondent against all the world except the conductor, whom it appointed to protect her : reserving to the shepherd's dog a right to worry the sheep. No subtleties in the books could lead us to sanction so vicious an absurdity.

The contract of carriage was very surely the contract of appellant, not of the agent who sold the ticket. It rested with the appellant to perform it by agents of its own choice, on its own responsibility. It chose the officers of the train, with the conductor at their head, to perform its contract for it. Where was the corporation and by whom represented, as to this contract and this passenger? Not surely in some foreign board-room, by directors making regulations and appointing agencies

Craker vs. The Chicago & Northwestern Railway Company.

for the corporate business. They could not perform this contract. Not surely in some distant office, by a superintendent or manager issuing the orders of the directors to his subordinates. He could not perform this contract. *Quoad* this contract and this passenger, the corporation was present on this train to keep it and to care for her, represented by the officers of the train, who possessed, *pro hac vice*, the whole power and authority, and were the living embodiment of the ideal entity which made the contract, was bound to keep it, and is appellant here to contend that it has no responsibility for the flagrant violation of the contract, which the respondent paid it to make and to keep, by its sole present representative appointed to keep it on its behalf. Like the English Crown, it lays its sins upon its servants, and claims that it can do no wrong. We cannot bend down the law to such a convenience. The appellant tortiously broke this contract as surely as it made it: committed this tort as surely as it made the contract.

We are unwilling to waste time or patience in discussing the conductor's violation of the appellant's contract with the respondent. Every woman has a right to assume that a passenger car is not a brothel; and that when she travels in it, she will meet nothing, see nothing, hear nothing, to wound her delicacy or insult her womanhood. It is enough to say that the appellant's contract of careful carriage with the respondent was not kept, was tortiously violated by the officer appointed by the appellant to keep it.

And so the appellant seems at the time to have regarded it. It is very certain that it had a right to dismiss the conductor, as it did promptly and most properly, rescinding his contract of employment for violation of his duty. For that person violated his contract with the appellant, by violating the appellant's contract with the respondent. He sinned in the course of his employment, against the appellant and the respondent alike: in one and the same act broke his own contract with the appellant, and the appellant's with the respondent.

We cannot think that there is a question of the respondent's right to recover against the appellant, for a tort which was a breach of the contract of carriage. We might well rest our decision on principle. But we also think that it is abundantly sanctioned by authority. *Railroad Co. v. Finney, Bass v. Railway Co., Weed v. Railroad Co., Nieto v. Clark, Railroad Co. v. Hinds,* and *Railroad v. Rogers, supra ; Railroad Co. v. Derby,* 14 How., 468; *Moore v. Railroad Co.,* 4 Gray, 465; *Ramsden v. Railroad Co.,* 104 Mass., 117 ; *Maroney v. Railroad Co.,* 106 id., 153; *Coleman v. Railroad Co.,* id., 160; *Bryant v. Rich,* id., 180; *Railroad Co. v. Vandiver,* 42 Pa. St., 365; *Railroad Co. v. Anthony,* 43 Ind., 183; *Railroad Co. v. Blocher,* 27 Md., 277; *Railroad Co. v. Young,* 21 Ohio St., 518; *Sherley v. Billings,* 8 Bush, 147; *Seymour v. Greenwood,* 6 Hurl. & N., 359; *Bayley v. Railroad Co.,* L. R., 7 C. P., 415. There are cases, even of recent date, which hold the other way. But we think that the great weight of authority and the tendency of decision sanction our position.

II. It was not necessary to the decision of *Bass v. Railway Co.,* and we were not then quite prepared, to pass upon the rule of damages in such cases as that and this. We were then aware of some apparent discrepancy between things said in that case and in *Railroad Co. v. Finney,* and purposely omitted all allusion to the latter case. In this case, as in *Bass v. Railway Co.,* the rule of damages has been fully and well discussed, and is more or less involved in the decision of this case. We have again considered it, and are now prepared to state our views of the rule in such cases.

It is said in *Railroad Co. v. Finney,* that the plaintiff in such a case is not entitled to exemplary damages against the principal, for the malicious act of the agent, without proof that the principal expressly authorized or confirmed it. Without now discussing what would or would not be competent or sufficient evidence of such authority or confirmation, we may say that we have, on very mature consideration, concluded that the rule

in *Railroad Co. v. Finney* is the better and safer rule. We are aware that there is authority, and perhaps the greater weight of authority, for exemplary damages in such cases, without privity of the principal to the malice of the agent; and that reasons of public policy are strongly urged in support of such a rule. *Goddard v. Railroad Co.*, 57 Me., 202; *Sanford v. Railroad Co.*, 23 N. Y., 343; *Railroad Co. v. Rogers*, 38 Ind., 116; and other cases. But we adhere to what is said on that point in *Railroad Co. v. Finney.* We think that in justice there ought to be a difference in the rule of damages against principals for torts actually committed by agents, in cases where the principal is, and in cases where the principal is not, a party to the malice of the agent. In the former class of cases, the damages go upon the malice of the principal : malice common to principal and agent. In the latter class of cases, the recovery is for the act of the principal through the agent, in malice of the agent not shared by the principal; the principal being responsible for the act, but not for the motive of the agent. In the former class, the malice of the principal is actual ; in the latter, it must at most be constructive. And we are inclined to think that the justice of the rule accords with public policy. Responsibility for compensatory damages will be a sufficient admonition to carrier corporations to select competent and trustworthy officers. And responsibility for exemplary damages, in cases of ratification, will be an admonition to prompt dismissal of offending officers, as their retention might well be held evidence of ratification. The interest of these corporations and of the public, in such matters, should be made alike as far as possible. And we hold the rule, as we have stated it, the justest and safest for both.

It was also said in *Railroad Co. v. Finney*, that the action is in tort ; but that, in cases not calling for exemplary damages, the rule of damages should be as in actions *ex contractu*, the actual loss sustained by reason of the misconduct of the conductor.

This was said *arguendo*, without attempt at close connection or exact statement; and it is not altogether easy to ascertain its precise meaning. If it mean, as it may, that in such cases the recovery against the principal for the tort committed by the agent is limited to the mere pecuniary loss, we cannot sanction it. Such a rule would be in conflict with all known rules of damages in actions of tort for personal wrongs; and would be almost equivalent to a license to officers of railroad trains and steamboats to insult and outrage passengers committed to their care for courtesy and protection: mischievous alike to the companies and the public. But if it mean, as it may and probably was intended, compensatory damages as in like actions for other personal torts, we affirm and adopt it as the rule of the court. We see no reason for distinguishing such actions from others of like character, in the rule of damages.

In *Wilson v. Young*, 31 Wis., 574, LYON, J., inadvertently fell into some subtleties found in Mr. Sedgwick's excellent work, which appear to us all now to confuse compensatory and exemplary damages. The distinction was not in that case, and the passage in Sedgwick was cited and approved, as such high authorities often are, without sufficient consideration. We all now concur in disapproving the distinction.

In giving the elements of damages, Mr. Sedgwick distinguishes between "the mental suffering produced by the act or omission in question: vexation: anxiety:" which he holds to be ground for compensatory damages: and the "sense of wrong or insult, in the sufferer's breast, from an act dictated by a spirit of willful injustice, or by a deliberate intention to vex, degrade or insult," which he holds to be ground for exemplary damages only. Sedgwick's Meas. Dam., 35.

Mr. Sedgwick himself says that the rule in favor of exemplary damages "blends together the interests of society and the aggrieved individual, and gives damages not only to recompense the sufferer, but to punish the offender" (ib., 38); and, following him, this court held in the leading case of *McWil-*

*liams v. Bragg*, 3 Wis., 424, and has often since reaffirmed, that exemplary damages are "in addition to actual damages."

In actions of tort, as a rule, when the plaintiff's right to recover is established, he is entitled to full compensatory damages. When proper ground is established for it, he is also entitled to exemplary damages, in addition. The former are for the compensation of the plaintiff; the latter, for the punishment of the defendant and for example to others. This is Sedgwick's blending together of the interest of society and the interest of plaintiff. And it is plain that there can not well be common ground for the two. The injury to the plaintiff is the same, and for that he is entitled to full compensation, malice or no malice. If malice be established, then the interest of society comes in, to punish the defendant and deter others in like cases, by adding exemplary to compensatory damages.

We need add no authority to Mr. Sedgwick's that, in actions for personal tort, mental suffering, vexation and anxiety are subject of compensation in damages. And it is difficult to see how these are to be distinguished from the sense of wrong and insult arising from injustice and intention to vex and degrade. The appearance of malicious intent may indeed add to the sense of wrong; and equally, whether such intent be really there or not. But that goes to mental suffering, and mental suffering to compensation. So it seems to us. But if there be a subtle, metaphysical distinction which we cannot see, what human creature can penetrate the mysteries of his own sensations, and parcel out separately his mental suffering and his sense of wrong — so much for compensatory, and so much for vindictive damages? And if one cannot scrutinize the anatomy of his own, how impossible to dissect the mental agonies of another, as a surgeon does corporal muscles. If possible, juries are surely not metaphysicians to do it. And we must hold that all mental suffering directly consequent upon tort, irrespectively of all such inscrutable distinctions, is ground for compensatory damages in action for the tort.

Craker vs. The Chicago & Northwestern Railway Company.

With these views, we can see no error in the charge of the court below on the subject of damages.

III. The respondent appears to be of respectable rank in life, and of sufficient culture to qualify her for teaching in public schools. In the painful trial of character and temper of the scene which culminated in the assault, in her action and demeanor following upon it, in the interview intruded upon her by the appellant, and in the embarrassment of her examination on the trial, she appears to have acted with great propriety, free from all exaggeration and affectation. She appears in the record to be a person who would feel such a wrong keenly. She was entitled to liberal damages for her terror and anxiety, her outraged feeling and insulted virtue, for all her mental humiliation and suffering. We cannot say that the damages are excessive. We might have been better satisfied with a verdict for less. But it is not for us, it was for the jury, to fix the amount. And they are not so large that we can say that they are unreasonable. Who can be found to say that such an amount would be in excess of compensation to his own or his neighbor's wife or sister or daughter? *Hewlett v. Cruchley,* 5 Taunt., 277. We cannot say that it is to the respondent.

*By the Court.*—The judgment of the court below is affirmed.