Minshall, J.
In the original suit the plaintiff sought to recover of the defendant damages for injuries occasioned him by one of its servants, acting in the capacity of janitor, the averment being that the janitor being then and there engaged in the performance of his duties as such, “assaulted the plaintiff and violently, wrongfully, recklessly and carelessly caused a ladder on which he was lawfully engaged at work in the school room of the defendant, to be overturned” whereby he was violently thrown to the floor and seriously injured. On the trial to a jury, at the close of the plaintiff’s *453 evidence, the court, on motion of the defendant, instructed the jury to render a verdict for the defendant, which was done. A motion for a new trial was overruled, exception taken and judgment rendered on the verdict. A bill of exceptions, containing all the evidence, was also taken and made a part of the record. On error to the circuit court the judg’ment was reversed for error in directing a verdict for the defendant; and the question is now presented to this court, whether the trial court erred in directing a verdict for the defendant on the evidence produced by the plaintiff.
The evidence offered tended to show that the plaintiff had been called by the company for the purpose of repairing an electrical light in a room of the college, and was so engaged at the time he was thrown from the ladder to the floor by the act of the janitor and injured. It also tended to show that the janitor was at the time engaged in the performance of his duties, cleaning up the room, and this required the moving of the tables from one part o'f the room to another. The ladder had been placed on one of these tables, so that the light that needed repair could be reached. That the janitor, being delayed in his work by the time taken to repair the light, became impatient, and demanded the plaintiff to get down; he was told that it would only take a few minutes, but he was unyielding, and violently shoved the table, with the result before stated.
It would seem that there cannot be much doubt that the janitor was at the time engaged in the performance of his duties, or, at least, that that question should have been submitted to the jury. He had, for the time being, the custody of the room, *454 and was engaged in cleaning it up and putting it in order fon use that evening, which, as before stated, required the moving of tables from one part of the room to another. There was some evidence that the janitor had an ill will against the plaintiff, and availed himself of this opportunity- to injure him. If this were so, and the act was done with no other purpose, it was a clear departure from his employment, and the master is not liable. Railroad v. Wetmore, 19 Ohio St., 110. Whether the act was done with this purpose or not was certainly a matter for the jury to determine upon a consideration of all the evidence. The manner and character of the witnesses testifying in this regard, might largely influence the jury in arriving at a conclusion on the subject.
Notwithstanding some earlier cases, it is, we think, clearly settled that the master is liable for the willful, or even malicious, as well as negligent acts of a servant, done in the course of his employment and within the scope of his authority. Mechem on Agency, sections 740, 741; Smith, Master and Servant, 151.
Among the older cases on the subject, and which have frequently been followed, are McManus v. Crickett, 1 East, 106, where it was held that the master was not liable for the act of his servant in purposely driving his chariot against the chaise of the plaintiff, the master not being present; and Wright v. Wilcox, 19 Wend., 343,“where it was held, on the authority of the previous ease, that a father was not liable for the willful acts of his son in running over a small boy while driving the wagon of the father, the latter not being present. In these cases, and those following- them as precedents, it' is held that the master is liable only for the negli *455 gent acts of his servant done in the course of his employment and the scope of the authority conferred; and that, in the absence of evidence, he cannot be supposed to have authorized the doing of a willful or malicious act. This, as observed by Chief Justice Ryan, in Craker v. Railway Co., 36 Wis., 657, seems an unnecessary subtlety, for, by a parity of reasoning, a master should not be held for the negligent acts of his servant, though done in the course of -his employment, since it could hardly be presumed that any master would authorize negligence on the part of his servant, in conducting his business, any more than he would malice or willfulness; and such, it would seem, as observed by Chief Justice Ryan, was the ground of the decision m Middleton v. Fowler, 1 Salk., 282, which was a case for negligence, where it is said, “no master is chargeable with the acts of his servant but where he acts in the execution of the authority given him, ’ ’ and, he remarks, that it is a singular commentary on the subtleties of McManus v. Crickett, that Middleton v. Fowler, is the only adjudged case cited to support it.
In Wright v. Wilcox, it is said, that “the dividing line is the willfulness of the act.” The great weight of modern authority and reason, is against this as the proper distinction. The learned judge just referred to, after an elaborate examination of the cases, and the reason of the rule, respondeat superior, observes that, “In spite of all the learned subtleties of so many cases, the true distinction ought to rest, on the condition whether or not the act of the servant be in the course of his employment.” Craker v. R. R. Co., supra; Redding v. Railroad Co., 3 S. C., 1. The learned author, whose work on Agency we have cited above, makes this *456 comment: “It does not follow, by any means, from this rule that the principal is liable for any willful or malicious act of his agent but only for those which are committed by the agent while acting in the course of his employment and within the scope of his authority. At the same time, it is not to be inferred that the principal’s liability depends upon whether he has'or has not intentionally authorized the doing of the wrongful act. If he has done so, he is, of course, liable. But what is meant, is, that if the agent, while engaged in doing something which he is authorized to do, and while acting in the execution of his authority, inflicts an injury on a third person, though willfully or maliciously, the principal is liable. But if, on the other hand, the agent steps aside from his employment to do some act having no connection with the-principal’s business, and to which he is inspired by pure personal and private malice or ill will, the principal is not liable.” The author then gives many instances in which the master has been held liable for the willful acts of his servant. For example: Where the engineer of a locomotive wantonly and maliciously sounded the whistle so as to frighten the horse of a traveler on the highway causing it to run away and injure him; where an engineer purposely ran down and killed the plaintiffs’ cattle; where an agent in the course of his employment instituted a malicious prosecution; where a railway brakeman assaulted and grossly insulted a passenger, upon the false pretense that he had not surrendered his ticket; where, under like circumstances, the conductor willfully and wrongfully caused a passenger to be ejected from the train; where the servant and some of the table-waiters upon a passenger boat, wrongfully and without provocation assaulted a *457 passenger; where the conductor of a passenger train kissed a female against her consent; where a brakeman struck a passenger in the face with a lantern because the passenger, who had lost his watch, said he thought the brakeman had it; where the driver of a street railroad ear maliciously assaulted a passenger because he expostulated with the driver about an assault made by him upon another person outside the ear; and where a railway brakeman made a malicious assault upon a passenger who attempted to enter the wrong car. He then refers to the Ohio case of Railway Co. v. Wetmore, 19 Ohio St., 110, and distinguishes it as a ease “where a prospective passenger, while seeking to get his trunk checked, provoked a personal quarrel with the baggage-master, and was struck by the latter as an act of personal resentment,” and the company was held not liable. This case, and that of Stranahan Co. v. Coit, 55 Ohio St., 398, may be regarded as standing at the opposite extremities of the master’s liability for the willful and malicious acts of his servants, the one without, and the other within, the liability. In the latter case, the defendant had a contract with Stranahan Co., the plaintiff, for the delivery of pure milk; the milk delivered was adulterated and the plaintiff was thereby injured in its business. From the evidence it appeared that the adulteration had been caused by the wrongful act of the defendant’s servant, delivering the milk, and that he adulterated the milk for the malicious purpose of injuring the business of his employer. It was claimed that this fact exonerated the employer; but it was held that the delivery of milk was in the course of his employment, and that his ill motive toward his employer, did *458 not relieve the latter from his liability to the plaintiff. Bradbury, J., dissented; but there seems to be [no real ground for the dissent. The case embodies a correct application of the principle of respondeat superior, as nbw interpreted, and as laid down in the earlier case of Railroad Co. v. Young, 21 Ohio St., 524. It was a case where the plaintiff below and his wife were by force, wrongfully excluded from a passenger car; and it was argued that the master was not liable for such wrongful acts unless shown to have been authorized by him directly or by some general rule of the company. White, J., after showing that the act was done in the course of the conductor’s employment, said “When a person is injured by the act of a servant, done in the course of his employment, we see no' good reason, why the motive or intention of the servant should operate to discharge the master from liability. If the nature of- the injurious act is such as to make the master liable for its consequences, in the absence of the particular intention, it is not perceived how the presence of the intention can be held to excuse the master.”
The liability of the master for the acts of his servant, is fully and accurately stated, conform-ably to the modern rule, in Smith, Master and Servant, 151. See, also, Weed v. Railroad Company, 17 N. Y., 362; Mott v. Ice Company, 73 N. Y., 543; Railroad Company v. Derby, 14 How. (U. S.), 486; Marshall v. Stewart, 33 Eng. L. & E., 7. It would seem from Seymour v. Greenwood, 7 Hurls. & Nor., 354, that the case of McManus v. Crickett, has been materially modified, and .the law there brought more in harmony with the modern cases.
*459 Applying the principles of the master’s liability for the acts of his servant, as interpreted by the modern decisions, to the facts of the case as disclosed by the plaintiff’s evidence, should the trial court have directed a verdict for the defendant? That it was a part of the janitor’s employment to clean up the room, and that, to do so, it was necessary to move the tables from one part of the room to another, is not disputed. And it may be inferred from the evidence, that a part of the work of moving the tables had been done; and that the completion of the work was delayed by the use made of one of the tables by the plaintiff in repairing the light; that the janitor became impatient, would wait no longer, and proceeded to move the table in a violent manner, regardless of the safety of the plaintiff, and he was thrown to the floor and injured. On the other hand it is claimed that the janitor, by reason of his ill will toward the plaintiff, was actuated wholly by malice, and violently shoved the table, not in the performance of any duty within his employment, but with the willful purpose only of injuring the plaintiff. But it must be observed, that this is the inference the defendant would have drawn from the evidence ; but, certainly, an impartial mind may draw from it the former conclusion ; and this shows that, from the same evidence, different minds may draw different conclusions — one favorable, and the other unfavorable, to the claim of the plaintiff; and hence the evidence should have been submitted to the jury under proper instructions as to the law. This is the proper rule in determining whether a verdict should be directed in any case. The so-called “scintilla rule,” frequently applied as a stigma to the practice that requires the case to be *460 submitted to the jury when there is any evidence to support the plaintiff’s case, is better calculated to confuse than enlighten the mind.
In many cases it is clear from the nature of the act, that it is not within the scope of the servant’s employment. This is so in the Wetmore case. There the servant’s duty was to check baggage; and when he made a violent assault on the plaintiff because he had provoked him, he turned aside and made an assault, not in the course of his employment, and for which bhe master was not liable. But when, as in this case, the act done — the pushing of the table — was, in its nature, within his employment, and the question is, whether it was in fact done in the performance of his service to his master, or was done wholly for the purpose of injuring the plaintiff and none other, it necessarily becomes, under our system of administering justice, a question to be determined by the trial of the fact. Reddiny v. Railroad Company, 3 S. C., 1; Jackson v. Railroad Company, 47 N. Y., 274; Rounds v. Railroad Company, 64 N. Y., 129, 137. In the latter case, which is one where a brakeman kicked a boy from a train while it was moving, it is said, by Andrews, J., delivering opinion, “Neither was the defendant entitled to have the court rule, as a matter of law, that, upon the circumstances as shown by the evidence on the part of the plaintiff, the defendant was not responsible. It is conceded that the removal of the plaintiff from the car was within the scope of the authority conferred upon the baggageman. The plaintiff had no right to be there. He'was not a passenger or servant, and had no express or implied permission to be upon the car. The brakeman in kicking the boy from the platform, acted violently and un *461 reasonably, and to do this while the ear was in motion, and when the space between it and the wood-pile was so small, was dangerous in the extreme. But the court could not say from the evi: dence that the brakeman was acting outside of and without regard to his employment, or designed to do the injury which resulted, or that the act was willful within the rule which we have stated.” The rule “stated” is substantially the same as that adopted, as the result of the modern decisions. After having so stated it, the learned judge says: “And when it is said that the master is not liable for the willful wrong of the servant, the language is to be understood as referring to an act of positive and designed injury, not done with a view to the master’s service, or for the purpose of executing his orders.”

Affit'med.

Shauck and Spear, JJ., dissent from the judgment.