## Knoxville Traction Co. v. Lane.

### (*Knoxville.* October 28, 1899.)

1. **Common Carrier.** *Liability for insults to passengers.*

   A common carrier—*e. g.*, an electric street railway company—is liable in damages to a passenger not only for injury to his person by the violence of its employe, but likewise for injury to his feelings by the indecent and insulting language of its employe, upon the ground, not of tort or negligence, but of breach of its contract, that obligates the carrier not only to transport the passenger, but to guarantee him respectful and courteous treatment, and to protect him from both violence and insult from strangers, and, *a fortiori*, from its own employes. (*Post, pp. 382, 383.*)

   Case cited: Wadsworth v. Tel. Co., 86 Tenn., 707.

2. **Same.** *Same.*

   That a common carrier did not authorize or ratify, but promptly repudiated the violent act or insulting language of its employe that caused injury to the person or feelings of its passenger will not excuse it from liability to the passenger for the damages thus resulting from the breach of its contract. The obligation of its contract is absolute. If it selects agents to perform its contract the carrier and not the passenger must take the risk and assume responsibility for the acts and conduct of their agents. (*Post, pp. 384, 385.*)

   Case cited: Pullman Palace Car Co. v. Gavin, 93 Tenn., 53.

3. **Damages.** *Vindictive.*

   Exemplary damages are allowed when a wrongful act is done with a bad motive and in disregard of social obligations, or where there is negligence so gross as to amount to positive misconduct. Where fraud, malice, gross negligence or oppression intervenes the law blends the interests of society and of the aggrieved individual, and gives such damages as will operate to deter the defendant and others from similar acts of misconduct. (*Post, pp. 388, 389.*)

Knoxville Traction Co. *v.* Lane.

Cases cited: Doughty *v.* Shown, 1 Heis., 302; Railroad *v.* Garrett, 8 Lea, 439; Cox *v.* Crumley, 5 Lea, 529; Railroad *v.* Guinan, 11 Lea, 103.

4. SAME. *Same.*

Although a common carrier did not authorize or ratify, but promptly repudiated the grossly oppressive and insulting conduct of its employe towards its prssenger, it cannot thereby escape liability for exemplary damages. Its agent's act is its own act. (*Post, p. 389.*)

5. DECLARATION. *Count on the facts.*

Under a count on the facts in a declaration the Court will grant such relief, either for tort or for breach of contract, as is justified by the averments. (*Post, pp. 386, 387.*)

---

FROM KNOX.

---

Appeal in error from Circuit Court of Knox County. JOSEPH W. SNEED, J.

WEBB & McCLUNG for Traction Co.

CORNICK & CORNICK for Lane.

*S. G. SHIELDS, Sp. J. This action was brought by J. E. Lane and his wife, Maggie Lane, against the Knoxville Traction Company, a common carrier of passengers, to recover damages for injuries to the feelings and sensibilities of Maggie Lane while she was a passenger on one of the street cars of the defendant company, growing out of an al-

---

*S. G. Shields, Esq., of the Knoxville bar, was appointed by the Governor to sit during the absence of Judge McAlister on account of illness.—REPORTER.

leged breach of its contract of carriage, caused by insulting and indecent language used to and about her by one of the company's employees in charge of said car. The declaration contains three counts.

The second count of the declaration alleges that the Knoxville Traction Company is a common carrier of passengers, and is engaged in operating an electrict street car system over the streets and thoroughfares of Knoxville; that on July 29, 1898, the plaintiff, Maggie Lane, became a passenger on board of one of the cars of defendant company, at one of its suburban stations, for the purpose of being transported into the city of Knoxville, to a point near the terminus of said line, and paid the fare required by the defendant for her passage; that said car was in the charge and under the management of a motorman and a conductor as the agents and representatives of the defendant company; that said motorman was accustomed to drinking while on duty and being abusive and insulting in his manner and language to passengers, all of which was well known to the defendant company, thus making it extremely hazardous, unsafe, and unfit for unprotected women and children to travel on the car so run and operated by said drunken motorman; that soon after boarding said car, paying her fare, and thus placing herself under the care, custody, and control of the said employees' and agents of the defendant, the said motorman, in the presence of the

conductor, another agent and employee of the defendant company, and in the presence of a passenger on said car, began in a loud, boisterous, and drunken tone of voice to make remarks to and about plaintiff, Maggie Lane, directing his words and conversations especially to a man who was one of the passengers on said car, and saying in substance, "She is a damn good-looking old girl, and I would like to meet her when she gets off," and making signs and gestures at and toward the plaintiff, and attempting to pass words back to her through said passenger; that said motorman kept up his loud and drunken conversation for a great length of time, in spite of the fact that plaintiff was greatly humiliated and distressed and was weeping and demanding of said motorman to refrain and desist from his said words and actions, but that her tears and demands were of no avail; that the said motorman continued the said gestures, attempted advances, and gross insults until the said car arrived at Gay Street, where the plaintiff got off said car and departed weeping, humiliated, and sorely grieved; that by reason of the wrongs and injuries above stated, plaintiff says that through the negligence, carelessness, recklessness, and unlawful conduct of the defendant through its agents, and its careless, negligent, and unlawful conduct of keeping and retaining in its employ the said incompetent, insulting, and drunken motorman and

employee, the plaintiff, Maggie Lane, suffered the indignities, insults, and humiliations · offered to and toward her as above stated, to her damage $5,000.

The first and third counts place the plaintiff's right of recovery upon the ground that the defendant willfully, maliciously, and knowingly employed and retained in its employment a drunken and incompetent motorman, and aver that the breach of contract and resulting injury to the plaintiff was occasioned by this alleged negligence on the part of the defendant company.

The defendant company demurred to the declaration upon the two following grounds, to wit: First, that the conduct imputed to the motorman in the first, second, and third counts was not sufficient in law to sustain the action; second, that if the conduct of the motorman was such as to render him liable, still the defendant would not be liable, because it is not averred that the defendant had authorized or ratified the conduct of said motorman.

The demurrer was overruled by the Circuit Judge, and the defendant then filed a plea of not guilty, and issue was taken on this plea, and the case was tried before a jury.

The undisputed facts, as disclosed by the record, are as follows: On July 29, 1898, the plaintiff, Maggie Lane, who was a woman of good character, boarded one of defendant's cars at or near Lake Ottosee, in the suburbs of Knoxville, for the purpose of

being transported into the city, and paid the fare required by the defendant. Just before this car reached the city, the plaintiff noticed that the motorman was drinking. She was sitting near the center of the car. The motorman turned and looked toward her, and said: "You are a good-looking old girl, and I would like to meet you when you get off." She became indignant, and remarked that she would have some one attend to him when she got off. Thereafter he continued to make signs to her until the conductor interfered, and the motorman then said: "She is nothing but a whore." The plaintiff commenced to cry, and the motorman seemed to get angry, and said other abusive things to her. He stated that he knew all about her, and that she "would go out to the lake and throw herself out to the men there." He did not put his hands on her or attempt to do so. When he arrived at the station the plaintiff went to the office of the defendant company crying, and complained of the insulting conduct of the motorman toward her. The motorman was taken off the run and immediately discharged by the company. This motorman had theretofore shown himself to be a good and faithful employee of the company, and had never been drunk before while on duty. The defendant did not know that he drank at all.

At the conclusion of the plaintiff's testimony the defendant demurred to the evidence upon the

ground that the plaintiff's testimony showed that it did not know of the drunkenness of the motorman, and that it discharged him immediately upon learning of his conduct; and also upon the ground that as the injury alleged in the declaration was the willful, malicious, and unlawful employment of a drunken motorman, the plaintiff's cause of action was not made out by her own proof, as there was no evidence to support this allegation. The Circuit Judge overruled this demurrer to the evidence and submitted the case to the jury to ascertain and fix the amount of damages suffered by the plaintiff. The jury rendered a verdict for $500, and the defendant's motion for a new trial having been overruled, it appealed to this Court, and has assigned errors.

The first error assigned is that the Circuit Judge erred in overruling the defendant's demurrer to the plaintiff's declaration. This demurrer raised sharply the question as to whether a common carrier can be held in damages for injuries to the feelings of passengers caused by a verbal insult by one of its employees in charge of the car upon which the passenger is riding. The plaintiff in error insists that it is not liable for the injury complained of, unless the servant inflicting the injury would be liable, and that the servant could not be held liable for damages for mere injuries to feelings resulting from a verbal insult.

This Court cannot assent to this proposition.

In the absence of any contractual relation between the parties this insistence of the plaintiff in error might be tenable, but that is not the case presented by this declaration. When Mrs. Lane entered the car of the defendant company, and paid her fare, there was an implied contract on the part of the company that she should receive proper, polite, and courteous treatment from its employees, and that she should be protected against hearing obscenity, witnessing immodest conduct, or submitting to wanton approach, and a violation of this contract on the part of the defendant company is actionable, and entitles her to some damages. The contract to carry passengers is not one of mere toleration and duty to transport the passenger on its cars, but it also includes the obligation on the part of the carrier to guarantee to its passengers respectful and courteous treatment, and to protect them not only from violence and insults from strangers, but also against violence and insult from the carrier's own servants. *Rose* v. *Railroad,* 106 N. C. Rep., 170; *Cooper* v. *Railroad,* 36 Wis., 657; *Lafitte* v. *New Orleans City & Lake Railroad Co.* (La.), L. R. A. Rep., Vol. 12, 337; *Goddard* v. *Grand Trunk Railway Co.* (57 Me., 202), 2 Am. Rep., 39; *Croaker* v. *The Chicago & Northwestern Railway Co.* (36 Wis., 657), 17 Am. Rep., 504; Woods Railway Law, Vol. 2, Sec. 315; Elliott on Railroads, Vol. 4, Sec. 1630; Rapalge & Mack's Digest of Railway

Law, Vol. 2, pp. 428, 429, 430, and authorities there cited.

It is insisted, however, that the defendant company did not authorize the injury complained of, and did not ratify the wrongs perpetrated by its servant, and that, therefore, it cannot be held liable for this unlawful, oppressive, and insulting act of its motorman. This insistence on the part of the defendant company is also untenable, and is not supported by the authorities. It is well-settled law that in all cases where the master owes a contractual duty to third persons, or to the public, he cannot shirk or evade it by committing its performance to another, but is bound absolutely to perform the duty, and is liable for a failure to do so in any respect whereby injury results to others, whether such failure results from negligence or from the willful, wanton, or criminal conduct of the agent to whom the duty is committed. Being bound to do the act or perform the duty, if he does it by another, the master is treated as having done it himself, and the fact that his servant or agent acted contrary to his instructions, without his consent, or even fraudulently, will not excuse him. Authorities cited above; also, *Pullman Palace Car Co.* v. *Gavin,* 9 Pickle, 58; Woods' Railway Law, Vol. 2, Sec. 315; Elliott on Railroads, Vol. 4, Sec. 1630. Either the company or the passenger must take the risk of infirmities of temper, maliciousness,

and misconduct of the employees whom the company has placed upon its cars, and to whom it has committed the discharge of its duty to protect and look after the safety of its passengers. A passenger has no control over them, and the company alone has the power to select and remove them. It is, therefore, but just to make the company, rather than the passengers, take the risk, and to hold it responsible. This leads to the conclusion that the defendant company is liable for the injury and insult willfully inflicted upon Mrs. Lane by its employee while engaged in performing the duty which the company owed to her, although the company was guilty of no negligence in selecting its employees, and did not authorize or ratify the servant's wrongful act. Elliott on Railroads, Vol. 4, pp. 2579, 2580, and authorities there cited. Any other rule might place the traveling public at the mercy of a reckless and vicious employee, and this Court is not inclined to establish a precedent which will impair the personal security of passengers, but prefers to adopt the reasonable rule laid down by the authorities above cited, in order to insure, as far as may be practicable, the full compliance by common carriers with the duties imposed upon them by the law and by the contractual relation between them and their passengers.

The defendant insists, further, that this suit is based solely upon injury to the feelings of the

plaintiff, and that it was held by this Court, in the case of *Wadsworth* v. *Telegraph Co.,* that such an action cannot be sustained. The defendant is mistaken in its assumption that this case rests alone upon injury to the feelings of the plaintiff, for the gravamen of this action is the defendant's breach of its contract of carriage, which includes, as has been heretofore stated, the duty to protect the passenger from insult or injury, either by its employees or third persons. This contract on the part of the defendant was directly violated by the inexcusable conduct of its servant toward Mrs. Lane, and the violation of the contract gave her a clear right of action and entitled her to recover some damages. She may, therefore, maintain her action to recover all the damages she may show herself to have sustained by reason of the wrongful act of the defendant's agents, including injuries to her feelings and sensibilities, as was held in the case of *Wadsworth* v. *Telegraph Co.,* 2 Pickle, 707. The jury have fixed the damages at $500, and it is not assigned as error that the verdict of the jury is excessive, nor would such assignment, if made, have been available in this case.

The defendant's second assignment of error is that the trial Judge erred in overruling the defendant's demurrer to the evidence. Under this assignment it is insisted that the only negligence alleged in the declaration is that the defendant

maliciously, willfully, and unlawfully employed and
retained in its employment a drunken and incom-
petent motorman, and that the proof shows be-
yond contradiction that the motorman was a good
man for the position, was not incompetent, and
that it did not know that he was in the habit
of drinking. The record does show that the
motorman in question had theretofore been a com-
petent and trustworthy employee of the company,
and that it had no notice that he was in the
habit of getting drunk; and, further, that the com-
pany discharged him as soon as the conduct com-
plained of in this action came to the knowledge
of its officers. The Court does not think, however,
that the only ground alleged in the declaration, upon
which the recovery in this case can properly be based,
was the malicious, willful, and unlawful employ-
ment of a drunken and incompetent motorman.
The second count in the declaration is an action
on the facts of the case, which is permissible
under our Code, and it is there stated with suf-
ficient clearness that the wrongs and injuries com-
plained of grew out of the defendant's violation
of its contractual duty as a common carrier of
passengers to protect this woman against the in-
sults that were heaped upon her by this drunken
motorman. This assignment is not, therefore, well
taken, and is accordingly overruled.

It is next insisted, under the third assignment
of error, that the trial Judge erred in charging

the jury that they could, if they they thought it was a proper case in view of the facts and circumstances developed by the proof, find vindictive or punitive damages against the defendant, in addition to the actual damage suffered by her. It is not claimed that the trial Judge's charge in reference to the manner in which vindictive damages can be assessed in a proper case was erroneous, but the contention is that the plaintiff's proof shows that the defendant did not know of the drunkenness of the motorman and promptly repudiated his act and discharged him, and that for these reasons this is not a case for the application of the principle of vindictive damages.

It has already been held in this opinion that because of the contractual relation between the plaintiff and defendant in this case, the latter was bound to see that the former received safe, courteous, and respectful treatment while on its car, and that it cannot excuse itself from liability upon the ground that it had committed the performance of this duty to its employees, and did not authorize them to commit the wrongs and injuries complained of. Being bound to perform these duties itself, and necessarily through agents, and having intrusted the performance of the same to this motorman, the defendant is treated as having perpetrated the injury itself, and the facts disclosed in this record make a clear case for vindictive damages. Where fraud, malice, gross

Knoxville Traction ·Co. *v.* Lane.

negligence, or oppression intervenes, the law blends the interest of society and of the aggrieved individual, and gives such damages as will operate to deter the defendant and others from similar acts of misconduct. *Doughty* v. *Shown,* 1 Heis., 302; *Railroad Co.* v. *Garratt,* 8 Lea, 439; *Cox* v. *Crumley,* 5 Lea, 529. Exemplary . damages are allowed when a wrongful act is done with a bad motive and in disregard of social obligations, or where there is negligence so gross as to amount to positive misconduct. 1 Suth. on Damages, 723; Sedgwick on Damages, 33; *Railroad* v. *Guinan,* 11 Lea, 103. The act of the servant in this case was the act of the master, and was oppressive and insulting in the highest degree, showing an utter disregard of the rights of the passenger under its protection, and . the trial Judge very properly charged the jury that, in its discretion, it might find vindictive or punitive damages against the defendant.

It results that there is no error in the judgment of the Circuit Court, and the same is affirmed with costs.