## WARMATH v. NORTH AMERICAN ACC. INS. CO.— 241 S. W. (2d) 938.

Western Division at Jackson.   March 5, 1951.

Warmath & Cunningham, of Humboldt, for appellant.

R. H. Spragins, of Jackson, and Rodgers Menzies, of Dyersburg, for appellee.

SWEPSTON, J. This is an appeal by complainant Warmath from an adverse decree in a suit to recover on an accident insurance policy on his deceased wife.

Mrs. Warmath was killed under the following circumstances.

Complainant, who was the pastor of Calvary Baptist church at Jackson, Tennessee contracted with Gulf Transport Company that it would supply a 37 passenger bus and driver to transport a group from his church in Jackson to Ridgecrest, North Carolina and return, for a religious assembly, at a contract price of $433.32, with the understanding that the bus would be available to the group for side trips out of Ridgecrest at the same cost per mile on which the originally planned trip had been figured. The contract price was to cover without regard to the number of passengers up to the capacity of the bus; the selection of the passengers was the responsibility of complainant.

The bus left Jackson on July 24, 1947 with 36 passengers including complainant's wife. Shortly afterwards the bus went off the road at a curve, turned over and killed Mrs. Warmath.

The policy provided that it would pay $1,000 if the insured be killed: ''by the wrecking of a public omni-

bus, taxicab or automobile stage which is being driven or operated at the time of such wrecking by a licensed driver plying for public hire and within which the Insured is traveling as a fare paying passenger''.

Complainant collected from each person the sum of $40 which was to cover an estimated $15 for transportation and other expenses such as meals and lodging. Complainant contributed that amount for his wife. Later on the Bus Company refused to accept any compensation because the trip was not completed after the wreck.

The Transport Company operates as public carrier but has no franchise east from Jackson to Nashville, between which points the wreck occurred, but it is permitted by the State to furnish chartered buses for off route trips as was done in this case. With reference to the charter business it solicits same but is under no legal obligation to furnish chartered buses to all who apply.

The Chancellor held that the vehicle was not a public omnibus plying for hire.

The assignments of error raise the question that (1) deceased was a fare paying passenger (2) in a public omnibus or automobile stage (3) driven by a licensed driver plying for hire.

Also, that the language of the policy is ambiguous and should be construed strictly against the insurer and liberally in favor of the insured.

Counsel for appellant in support of his contention that the vehicle was a public omnibus or automobile stage relies upon the case of Yellow Cab Co. v. Teller, 9 Tenn. App. 416, in which it was held that a taxicab company operating in the customary way is a common carrier and as such owes to a passenger the highest degree of care. Also, Rathburn v. Ocean Acc. & Guar. Corp., 299 Ill. 562, 132 N. E. 754, 19 A. L. R. 143; Primrose v. Casualty Co.,

232 Pa. 210, 81 A. 212, 37 L. R. A., N. S., 618, 622 (defining a public conveyance). To these may be added Cushing v. White, 101 Wash. 172, 172 P. 229, L. R. A. 1918F, 463 & annotation 468; Anderson v. Yellow Cab Co., 179 Wis. 300, 191 N. W. 748, 31 A. L. R. 1197.

We do not deem it necessary to pass on the question whether the Gulf Transport Company with reference to the furnishing of chartered omnibuses was a public or a private carrier in that aspect of its regular business, nor whether this particular bus was a public one.

We find it difficult to conceive of it being a public bus under the circumstances of this case, but if it were, the additional language of the policy provision is very restrictive.

It must not only have been a public bus, but must also have been operated at the time of the wreck by a driver plying for public hire.

The first question then under the language of the policy is what is meant by the phrase "plying for hire"?

The second is when must it be plying—at the time it is being operated, or at some other time, or at any other time, or on some other trip?

Counsel for appellant cites People v. Milne, 86 Misc. 417, 149 N. Y. S. 283, wherein was involved an ordinance providing that no public hack shall ply for hire upon the street, without being licensed.

Counsel for appellant in support of argument that the bus in the instant case was plying for hire, quotes from page 287 of 149 N. Y. S., as follows: "The conjunction of a given purpose with given conduct appropriate to effectuate it constitutes 'a plying for hire,' within the meaning of the ordinance, namely, the conjunction of the purpose to accept whenever the cab is vacant and unengaged persons who may offer themselves as passengers

for hire, coupled with conduct which evidences this purpose; as, for example, the placing of such cab on a public street where it is accessible to those who may wish to hire it, and the solicitation of passengers for hire by the one operating it, by word, act, or by the exhibition of appropriate signs or devices. In this case the defendant's purpose was inferable from his conduct, and his conduct was conducive to the effectuation of his purpose. Being actually hired is not the test of whether or not there is a plying for hire. One may ply for hire without being hired''.

But we think the first part of the next paragraph is more specifically applicable to the instant case: ''At the times referred to in the complaint the defendant was the chauffeur and operator of the vehicle, and certainly in the absence of testimony credited, tending to show that the defendant's control of the car was limited by his employment to a *special purpose,* or that between himself and his employer he was *not empowered to permit it to be hired without the intervention of some other representative of the company owning it while upon the public streets,* the defendant's conduct may be considered as bearing upon the question as to whether the vehicle in question was, at the time named in the complaint, so for hire, and therefore a public hack''.

On the facts reflected in the first paragraph above quoted defendant Milne was found guilty because he did those acts of solicitation upon the streets.

The construction of that ordinance arose again in People v. Cuneen, 94 Misc. 509, 159 N. Y. 967, 978, where the proof showed that defendant did not solicit business for his cab *upon the streets.* Held, the ordinance did not apply. The opinion refers to the absence of American authority on the construction of similar ordinances, but

interestingly reviews the English cases. It closes with the following pertinent language: "The Century Dictionary and Encyclopedia defines the word 'ply' as meaning 'to offer one's services for trips or jobs, as boatmen, hackmen, carriers', etc. Therefore the words 'plying for hire' would, if unlimited, include a solicitation of patronage, not only upon the streets, but also a solicitation of patronage at railroad stations or upon other private property. . . ."

But in each of the sections of the ordinances with respect to hacks, cabs, and taxicabs, the words "plying for hire" or soliciting for hire have been limited to such plying or solicitation upon the streets or public thoroughfares.

Again see People v. May, 98 Misc. 561, 164 N. Y. S. 717.

These cases all depend upon the *place where* the plying was being done, that is, was it or not upon the street?

In the last case, 164 N. Y. S. at page 719 bottom, it is said: "When subdivisions 1 and 4 of section 80 and section 106 are read together, it will be found that the board of aldermen provided a clear and ample test of determining whether a sight-seeing car comes within the definition of a public hack, and that test is the *use to which the vehicle is put.* If a sight-seeing car solicits public patronage on the streets, then it comes under the . . ". (Ordinance).

It seems to us by analogy that the clear language of the policy in the instant case provided the test. Was the driver authorized to, or did he in fact, engage in the solicitation of public patronage on this trip from any member of the public who might want to ride, or was he on a special trip carrying a special, designated group under a contract made by his superiors, which contract he was not authorized to amend under his employment?

If the former, then he was plying for public hire at the time of the wreck; if the latter, he was not so plying.

The phrase "at the time" is not to be interpreted as meaning that at the very instant of the wreck the driver was soliciting and open for public patronage; this would be too narrow, because even on a public bus the operator might have become loaded to capacity an hour before and not desirous of or able to accommodate any more passengers at the instant of the wreck.

The test under the policy is what was the character of the driver's activities while he was in charge of bus on this designated assignment. If he was neither authorized to solicit nor in fact did solicit other passengers, he was not on that trip plying for public hire, although his employer may have been soliciting similar contracts with other groups at the time this driver was making this trip.

The cases cited by appellee: Georgia Life Ins. Co. v. Easter, 189 Ala. 472, 66 So. 514, L. R. A. 1915C, 456; Chenery v. Emp. Liability Assur. Corp., 9 Cir., 4 F. (2d) 826; Fairchild v. United Service Corp., 52 N. M. 289, 197 P. (2d) 875; Pimper v. Nat'l Amer. Fire Ins. Co., 139 Neb. 109, 296 N. W. 465, are persuasive on the question of whether the Transport Company was a private carrier and the vehicle a private bus, but we think it unnecessary to discuss them in the view we have taken on the other condition of the policy.

We are of opinion that the driver was not plying for public hire at the time of the accident.

It is unnecessary to decide whether insured was a fare-paying passenger.

We find no ambiguity in the language of the policy, hence there is no occasion to apply the rule of

strict construction against the appellee who wrote the policy.

All assignments are overruled and a decree will be entered here dismissing the bill at costs of appellant.

Anderson, P. J., and Baptist, J., concur.